UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY KERPER,

    Plaintiff,

v.                                              Case No:  2:18-cv-151-FtM-UAM

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Kimberly Kerper, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on February 7, 2015, alleging that she became disabled on December 1, 2014. (Tr. 149-50). Plaintiff's application was denied initially on May 15, 2015, and upon reconsideration on August 4, 2015. (Tr. 106-08, 113-17). Plaintiff requested a hearing, and, on January 31, 2017, an administrative hearing was held before Administrative Law Judge Benjamin Chaykin ("the ALJ"). (Tr. 32-56). On April 26, 2016, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 15-28). Plaintiff requested review of the ALJ's decision, and, on February 9, 2018, the Appeals Council denied review of the ALJ's decision. (Tr. 1-6). Plaintiff initiated this action by Complaint (Doc. 1) on March 8, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2014, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had a single severe impairment: ulcerative colitis. (Tr. 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR 404.1567(c)." (Tr. 20). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an "accounting clerk, accounts payable/receivable" because such work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 23). The ALJ concluded that Plaintiff had not been under a disability from December 1, 2014, the alleged onset date, through April 26, 2017, the date of the ALJ's decision. (Tr. 23-24).

**II.      Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to account for all the limitations stemming from Plaintiff's ulcerative colitis. (Doc. 23 p. 11-22). Plaintiff contends that the ALJ's RFC finding does not account for all of the associated limitations caused by Plaintiff's ulcerative colitis, particularly the significant amount of time Plaintiff would miss from work in order to obtain treatment for the condition. (Doc. 23 p. 12). Plaintiff explains that her treatment for ulcerative colitis requires Remicade injections once every 8 weeks and that the process of receiving the injections takes about 4 hours of the day. (Doc. 16 p. 16). Plaintiff argues that the ALJ failed to address the absenteeism that would be caused by Plaintiff's Remicade injections and also failed to consider other limitations related to the treatment such as fatigue, headaches, and reduced immune system. (Doc. 23 p. 18-22). In response, Defendant argues that substantial evidence supports the ALJ's RFC finding. (Doc. 23 p. 23-29).

The record shows that Plaintiff has a long history of ulcerative colitis stretching back to at least 2007. (Tr. 40, 198, 405). Her colitis, when left untreated, causes frequent painful and unpredictable bowel movements. Plaintiff testified to having soiled herself in the past when she could not reach a restroom in time. (Tr. 40). She reported an inability to socialize due to

embarrassment at her fecal urgency. (Tr. 199). Plaintiff has treated at Gastroenterology Associates for her colitis. On January 8, 2015, their records document that Plaintiff presented with bright red blood per rectum, diarrhea and abdominal pain. (Tr. 294). Between January 14, 2015 and January 17, 2015, she was hospitalized at Lee Memorial for rectal bleed; acute ulcerative colitis and abdominal pain. (Tr. 251-76). She had an increase in symptoms since November 2014 and reported over 20 bloody stools per day. (Tr. 252). Later that month, her diarrhea had reduced in frequency, but she was still having diarrhea 5 times a day with a small amount of bleeding. (Tr. 286). In February 2015, her diarrhea had improved but she was still having blood in her stools. (Tr. 282). In March 2015, she reported 4-5 bowel movements per day, with blood in the stool once a day, and felt as if she was worsening. (Tr. 325). In April 2015, she reported 3 loose stools a day. (Tr. 320; 322).

During her January 2015 hospitalization, it was noted that Plaintiff had previously been receiving Remicade to control her symptoms; however, her gastroenterologist had tapered off the dosage due to it having become "ineffective." This had caused an increase in her symptoms with "mucous, bloody diarrhea." (Tr. 252; 267). She had been receiving this every 6 weeks. (Tr. 380-385). Around this time, Plaintiff reported that the Remicade infusions were too "difficult and time consuming for her to go to the infusion center." (Tr. 293). It was noted she had lost insurance coverage for this treatment. (Tr. 379). Her providers discussed trying to obtain an alternative treatment, Humira, but were ultimately unsuccessful in obtaining authorization for this until after she had resumed Remicade treatment again. (Tr. 296). In April 2015, Plaintiff requested that she be restarted on Remicade to ease her symptoms. (Tr. 320). She underwent an assessment to determine whether she had developed antibodies to the treatment. (Tr. 323).

Plaintiff began receiving Remicade infusions again in May 2015. She reported improvement in her symptoms, but she had side effects of a headache, which was noted to have occurred previously during this treatment. (Tr. 315). She reported better bowel control. (Tr. 361). She received her treatment of 100 mg dosage once every 8 weeks intravenously. (Tr. 362). In September 2015, she was doing well on Remicade with soft formed stools 1-2 times per day for the first 6 weeks following the Remicade infusion. She noticed that her stools became softer during the seventh week. She has occasional abdominal cramping and wished to dispense with premedication steroid because they altered her mood. (Tr. 407).

In January 2016, she reported "doing well" on Remicade (Tr. 398). It was noted that her bowel movements increased along with more abdominal pain in the week prior to her injections. (Tr. 403). In April 2016, this was reiterated. (Tr. 398). This treatment is documented to continue throughout the record. (*e.g.,* Tr. 425; 423; 546; 547; 555).

At the administrative hearing, Plaintiff testified that she was undergoing Remicade infusions once every 8 weeks, which were done intravenously for four hours at a time. (Tr. 41). She stated it resulted in being fatigued and she sleeps for about two days afterwards. (Tr. 41). She testified treatments start every two weeks, increased to four, followed by six, with the maximum interval being eight weeks. (Tr. 41-42). In the past, she had received this treatment with positive results but had built up a tolerance to it and was taken off. She had to build up again to eight weeks where she had maintained dosage for about a year. She had renewed these treatments after she stopped working. She testified to drowsiness and fatigue as side effects with additional pain and aches in her joints, hips, elbows and lower back. (Tr. 42).

In his decision, the ALJ acknowledged Plaintiff's Remicade prescription and noted that "she was doing well on remicade." (Tr. 21, 22).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

In this case, although the ALJ acknowledged that Plaintiff was undergoing Remicade injections, he failed to consider the absenteeism that results from the nature of this treatment. As noted above, at the administrative hearing, Plaintiff testified that she was undergoing Remicade infusions once every 8 weeks, which were done intravenously for four hours at a time. (Tr. 41). Plaintiff's description of the time required to receive the injections aligns with the description of the treatment from Remicade's website. *See The Remicade infusion process*, available at [https://www.remicade.com/rheumatoid-arthritis/getting-started/the-infusion-process]. Despite acknowledging that Plaintiff was undergoing Remicade injection treatment and that "she was doing well," the ALJ failed to consider or even mention whether Plaintiff's Remicade treatment would cause impermissible absenteeism. At the administrative hearing, the vocational expert testified that if Plaintiff was to be absent from work once every eight weeks, "she would not be able to maintain that employment . . . or other competitive employment." (Tr. 53). Given Plaintiff's testimony describing how her Remicade injections were actually administered and the

vocational expert's testimony, the Court finds it appropriate to remand for the ALJ to directly address the issue of absenteeism.

## III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED.** The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 2, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties